# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

IN RE: UNIVERSAL SERVICE FUND
TELEPHONE BILLING PRACTICES
LITIGATION                                              Case No. 02-MD-1468-JWL


**This Order Relates to All Cases**
_____


## MEMORANDUM AND ORDER

This multidistrict litigation consists of numerous putative class action lawsuits arising from the practices of defendants AT&T Corporation and Sprint Communications Company, L.P. and non-parties MCI WORLDCOM Network Services, Inc. and MCI WorldCom Communications, Inc. (collectively MCI) of charging their customers to recoup their contributions to the federal Universal Service Fund (USF) program.  Plaintiffs are customers or former customers of defendants and MCI who allege that defendants and MCI engaged in an illegal scheme of conspiring to overcharge them for USF-fund surcharges, thereby creating a secret profit center.  On December 1, 2003, the court entered a Memorandum and Order in this case that, in relevant part, compelled arbitration of plaintiff Thomas F. Cummings' claims in this case.  *See generally In re Universal Serv. Fund Tel. Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1129-37 (D. Kan. 2003).  This matter is presently before the court on plaintiff Cummings' motion for relief from the court's order compelling arbitration or, in the alternative, for limited discovery (doc. 393).  For the reasons explained below, this motion is denied.

## BACKGROUND

According to the allegations in plaintiffs' Second Consolidated and Amended Class Action Complaint (the complaint), plaintiff Cummings was at all relevant times a non-California AT&T residential customer.  He was originally intended to serve as a named plaintiff representing all non-California AT&T residential customers if the court had not compelled arbitration of his claims and, additionally, certified such a class.  The court, however, did neither of those things.  Instead, the court compelled arbitration of plaintiffs' Cummings' claims against defendants, thus rendering the class certification issue moot with respect to his claims.  In the court's order compelling arbitration, the court noted that the arbitration provision "by its plain terms bans class actions as well as arbitration on a class-wide basis" and the court stated that it would "enforce the parties' arbitration agreement precisely as it is written." *Id.* at 1137-38.

Nearly ten months after the court's order, on October 25, 2004, plaintiff Cummings filed a demand for arbitration with the American Arbitration Association (the AAA). Notwithstanding the court's order compelling arbitration of plaintiff Cummings' claims on a non-class basis, plaintiff Cummings' arbitration demand sought class-wide arbitration of all non-California AT&T residential customers' claims.  Subsequently, AT&T and plaintiff Cummings submitted letters to the AAA regarding whether the arbitration should proceed under the AAA's Supplementary Rules for Class Arbitration.  On December 29, 2004, after consideration of the parties' positions on this issue, a case manager with the AAA advised the parties as follows:

2

>[I]n the absence of an agreement by the parties or a clarification from the court, the Association will proceed with administration pursuant to . . . the Supplementary Rules for Class Arbitrations, pursuant to the request made on the Demand for Arbitration dated October 25, 2004. *The parties may wish to raise this issue, upon appointment of the arbitrator.*

(Emphasis added.)

On March 7, 2005, counsel for AT&T sent a letter to the AAA's chief executive officer. This letter is at the heart of the current motion. In the letter, counsel for AT&T asked the AAA's CEO to overrule the AAA's staff decision to administer plaintiff Cummings' arbitration demand under the Supplementary Rules for Class Arbitration. The letter argued that doing so was contrary to the AAA's Policy on Class Arbitrations. The letter reasoned that one of AAA's chief competitors, JAMS, had recently adopted a policy of disregarding contractual provisions that expressly prohibit class actions and that, "[a]s a result of the JAMS policy, it appears that ADR users are changing their clauses to delete JAMS as the chosen forum." By comparison, counsel for AT&T stated that, according to his knowledge, "the AAA has not seen an exodus of ADR users similar to that experienced by JAMS, because the [AAA's] Class Arbitration Policy makes it clear that the AAA will respect a class action prohibition unless a court rules otherwise." The letter concluded that if the AAA is not going to follow its own policy then "it should withdraw that policy and issue a clear and accurate statement as to its real policy, so that ADR users can make an informed decision whether to include the AAA in their clauses."

On March 15, 2005, plaintiff Cummings filed the current motion in which he characterizes the letter as threatening the AAA with a mass exodus of ADR users if the AAA did not reverse its position regarding whether plaintiff Cummings' arbitration would be

3

administered on a class basis.   The letter further implicitly threatened the AAA with the loss of AT&T's future business.   Plaintiff Cummings argues that this threat was improperly geared toward economic considerations, not the merits of the issue.   Consequently, this destroyed the AAA's impartiality and the court will ultimately be unable to enforce the arbitration award because it was procured by undue means.

On March 18, 2005, which was only eleven days after AT&T sent the letter to the AAA's CEO, the AAA sent the parties another letter reversing the AAA's prior position.   The letter explained that the AAA had reviewed this court's order compelling arbitration which stated that the court was enforcing "the parties' arbitration agreement precisely as it is written."   Thus, "contrary to the [AAA]'s prior understanding, it does not appear that Mr. Cummings' class claims have been directed to arbitration by the Court."

## ANALYSIS

For the reasons explained below, the court does not condone the manner in which counsel for AT&T handled this matter.   Nonetheless, having compelled arbitration and stayed plaintiff Cummings' claims, the court is not authorized by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (FAA), to interfere with the ongoing arbitration proceeding.   Plaintiff Cummings' arguments that AT&T's threat destroyed the impartiality of the AAA and will result in an arbitration award procured by undue means must wait until this court reviews the arbitral award. Accordingly, plaintiff Cummings' motion is denied.

4

As a threshold matter, the court rejects AT&T's argument that this court does not have jurisdiction to consider plaintiff Cummings' interlocutory arguments. The complaint invoked this court's diversity, federal question, and supplemental jurisdiction. The circumstances that gave rise to that jurisdiction are unchanged because the court did not dismiss plaintiff Cummings' claims when it compelled arbitration. Nothing in the Federal Arbitration Act grants or ousts the district court's jurisdiction over arbitrable claims. *Meyer v. Dans un Jardin, S.A.*, 816 F.2d 533, 538-39 (10th Cir. 1987); *see also LaPrade v. Kidder Peabody & Co.*, 146 F.3d 899, 390 (D.C. Cir. 1998) (district court's jurisdiction derived from the original diversity suit, not the FAA). The FAA simply directs the court to "stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3. Thus, the court retains continuing jurisdiction over plaintiff Cummings' claims against AT&T.

Nonetheless, with that being said, the FAA does not authorize the court to interfere with ongoing arbitration proceedings by making interlocutory rulings concerning the arbitration. Under the FAA, the court's role is limited to determining, first, the issue of whether arbitration should be compelled. *Id.* §§ 3-4. If so, then the court may next confirm, vacate, or modify the award. *Id.* § 9-11. The court may not, however, interfere with the ongoing arbitration proceeding. *See LaPrade*, 146 F.3d at 903 (the FAA contemplates that courts should not interfere with arbitrations by making interlocutory rulings); *Smith, Barney, Harris Upham & Co. v. Robinson*, 12 F.3d 515, 520-21 (5th Cir. 1994) (as long as a valid arbitration agreement exists and the specific dispute falls within the substance and scope of that agreement, the court may not interfere with the arbitration proceedings); *Miller v. Aaacon Auto Transport, Inc.*,

5

545 F.2d 1019, 1020-21 (5th Cir. 1977) (per curiam) (once the court is satisfied that the dispute is referable to arbitration, the court must allow the arbitration to proceed in accordance with the terms of the parties' agreement).   This principle is grounded in the notion that allowing such interference would frustrate the FAA's purpose to ensure "that the arbitration procedure, when selected by the parties to a contract, [is] speedy and not subject to delay and obstruction in the courts." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967); *see also Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983) (stating that the purpose of the FAA is to "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible").

        This does not mean that upon entering the order compelling arbitration the court must entirely refrain from acting again until the arbitration award is finalized.   The court may enforce its order compelling arbitration by, for example, imposing sanctions against a party who contradicts the court's order compelling arbitration, *see generally LaPrade*, 146 F.3d at 899 (district court did not abuse its discretion by imposing sanctions against a party who was ordered to arbitrate the dispute because that party clearly contradicted the order by going to state court to seek an order staying the arbitration without informing the state court about the federal district court's order compelling arbitration), or revoking the order if the party who sought to compel arbitration is "in default in proceeding with such arbitration," 9 U.S.C. § 3; *see also Miller*, 545 F.2d at 1020-21 (noting the court may vacate a stay pending arbitration if the defendant hinders the progress of arbitration).   The court may also make sure that its original order compelling arbitration was correct by, for example, reconsidering the ruling to

6

ensure that it was not "improvidently granted." *Miller*, 545 F.2d at 1020. An order compelling arbitration, however, cannot have been improvidently granted based upon the manner in which the arbitral forum is handling the dispute because those types of issues arise after the court has already determined the threshold issue of arbitrability. The FAA requires the court to address the propriety of the manner in which the arbitral forum handles the dispute by virtue of judicial review of the arbitral award. *See, e.g.*, 9 U.S.C. § 10 (authorizing the district court to vacate an arbitration award that was procured by corruption, fraud, or undue means; where there was evident partiality or corruption in the arbitrator; where the arbitrator was guilty of misconduct or misbehavior; or where the arbitrator exceeded his or her powers); *see generally, e.g.*, *Gulf Guar. Life Ins. Co. v. Connecticut Gen.*, 304 F.3d 476 (5th Cir. 2002) (holding the district court committed reversible error by striking a particular individual from serving as an arbitrator; evaluation of arbitrator bias must wait until after the award); *Vestax Sec. Corp. v. Desmond*, 919 F. Supp. 1061, 1076 (E.D. Mich. 1995) (court would not grant interlocutory relief based on an allegation of institutional bias and misconduct by the arbitral forum).

In this case, then, the court is unpersuaded that it has any authority under the FAA to grant plaintiff Cummings the type of interlocutory relief that he seeks by interfering with the AAA's decision regarding whether the dispute should be arbitrated under the AAA's Supplementary Rules for Class Arbitration. Plaintiff Cummings' arguments that AT&T's threat destroyed the impartiality of the AAA and will result in an arbitration award procured by undue means must wait until this court reviews the arbitral award. The cases cited by plaintiff Cummings do not persuade the court otherwise. The only one of those cases that even arguably

7

involved interference with an ongoing arbitration is *Metropolitan Property & Casualty Insurance Co. v. J.C. Penney Casualty Insurance Co.*, 780 F. Supp. 885 (D. Conn. 1991). That case, however, involved a vastly different procedural posture in which the district court was evaluating its diversity jurisdiction on removal and, in doing so, determined whether an allegedly partial arbitrator was more than a nominal party whose in-state presence defeated jurisdiction.   In evaluating the issue of whether the court should interfere with an ongoing arbitration proceeding by disqualifying the arbitrator, the district court touched upon some of the issues presented in this case.   The court finds the reasoning of the case to be unpersuasive for numerous reasons, many of which are perhaps attributable to the particular procedural posture of that case.   In any event, suffice it to say that the court is not bound by the district court's holding in that case and, more importantly, is unwilling to adopt that reasoning because it would require the court to go beyond the plain language of the FAA and also to disregard appellate-level case law, discussed previously, to the contrary.

Although the court is without power to interfere with the ongoing arbitration proceeding at this time, the court does wish to observe briefly that it flatly rejects AT&T's argument that its conduct before the AAA was entirely appropriate.   It appears to the court that the AAA's staff's original decision was consistent with the AAA's Policy on Class Arbitrations.   That policy states, in relevant part, that the AAA will administer demands for class arbitration pursuant to its class arbitration rules if the underlying agreement is silent with respect to class claims, but that the AAA will not accept for administration "demands for class arbitration where the underlying agreement prohibits class claims . . . unless an order of a court directs

the parties to the underlying dispute *to submit their dispute to an arbitrator or to the Association*."  Policy on Class Arbitrations, ¶ 2 (emphasis added).  This policy plainly states that the AAA will accept a demand for arbitration, even if the underlying contract prohibits class arbitration, if there is a court order compelling arbitration of the dispute.  The policy does not explicitly state that the party seeking to compel arbitration also needs to obtain a court order that the prohibition on class actions is unenforceable.

It also appears to the court that the AAA's staff's decision was consistent with the AAA's Supplementary Rules for Class Arbitration, which contemplate that the arbitrator will decide the issue of the enforceability of a class action prohibition such as the one contained in AT&T's contract with plaintiff Cummings.  As a threshold matter, the Supplementary Rules for Class Arbitration apply "where a party submits a dispute to arbitration on behalf of or against a class or purported class" and also "whenever a court refers a matter pleaded as a class action to the AAA for administration."  Supplementary Rules for Class Arbitrations § 1(a) (effective October 8, 2003).  In this case, plaintiff Cummings submitted his dispute to arbitration on behalf of a purported class and the original matter in this court was pleaded as a class action.  Thus, it appears that the AAA's staff was again following these rules when it advised the parties that the matter would be administered under the class arbitration rules.  The Supplementary Rules for Class Arbitration provide that the arbitrator will then decide whether the arbitration will proceed on behalf of a class.  *Id.* § 3 (requiring the arbitrator to "determine as a threshold matter . . . whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class").  Thus, the fact that the AAA's staff made a

9

preliminary determination to administer the action under the Supplementary Rules for Class Arbitrations did not mean that the dispute would necessarily proceed through arbitration as a class proceeding. Rather, the enforceability of the prohibition on class actions was to be determined by the arbitrator. Notably consistent with this policy was the AAA's staff's December 29, 2004, letter to the parties which pointed out to the parties that they could raise this issue again upon appointment of the arbitrator.

Moreover, it appears highly likely that the arbitrator would have enforced the prohibition on class arbitration if the arbitrator had been given the opportunity to do so. As the court ruled previously, the underlying contract clearly prohibits class-wide arbitration. Furthermore, the Supplementary Rules for Class Arbitration provide that whenever a court has resolved a matter that would otherwise be decided by an arbitrator, "the arbitrator shall follow the order of the court." *Id.* § 1(c). AT&T, however, did not allow the AAA the opportunity to follow its own rules and allow the arbitrator to resolve this issue. The court is not opining on plaintiff Cummings' undue means argument. As explained previously, the court cannot resolve that issue until this court is confronted with an arbitration award to review. The court observes, however, that the appearance has been created that counsel for AT&T used AT&T's economic power to successfully persuade the AAA to prematurely bend its own rules. The court can certainly understand that such tactics may legitimately have aroused suspicions by plaintiff Cummings.

Lastly, because the court has concluded that the FAA does not give this court the power to interfere with the arbitration proceedings, discovery on this issue is likewise unwarranted.

10

**IT IS THEREFORE ORDERED BY THE COURT** that plaintiff Cummings' motion for relief from order compelling arbitration or, in the alternative, for limited discovery (doc. 393) is denied.

**IT IS FURTHER ORDERED** that AT&T's motion for leave to cite additional authority (doc. 444) is denied as moot. The court notes that in resolving plaintiff Cummings' motion the court did not consider the information contained in AT&T's motion for leave to cite additional authority.

**IT IS SO ORDERED** this 27th day of May, 2005.

**s/ John W. Lungstrum**
John W. Lungstrum
United States District Judge