IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

IN RE: UNIVERSAL SERVICE FUND        )
TELEPHONE BILLING                    )
PRACTICES LITIGATION                 )
                                     )
                                     )        Case No. 02-1468-JWL
This Order Relates to All Cases      )

## MEMORANDUM AND ORDER

I.   Introduction & Background.

This multidistrict litigation consists of numerous putative class action lawsuits arising

from the practices of defendants AT&T Corporation and Sprint Communications Company

of charging their customers to recoup their contributions to the federal Universal Service

Fund ("USF") program.  Plaintiffs are customers or former customers of AT&T, Sprint, and

MCI who allege an illegal scheme of conspiring to overcharge for USF surcharges, thereby

creating a secret profit center.

Pursuant to 28 U.S.C. § 636(b)(1)(A), plaintiffs' motion to compel AT&T to produce

documents (**doc. 333**) has been referred to the undersigned magistrate judge.  *See* doc. 337.

The instant motion has been fully briefed.  *See* docs. 334, 343, 348, and 419.

On January 25, 2005, the court found that, given the  state of the record, it could not

determine whether the documents withheld by AT&T were subject to attorney-client

privilege or work product protection.  *See* doc. 373.  Thus, the court ordered AT&T to produce copies of the thirty-five documents at issue for an *in camera* review.

AT&T timely submitted the subject documents, accompanied by a privilege log.  After a preliminary review of those materials, chambers' staff contacted counsel for AT&T on January 28, 2005, to informally request more information with regard to those persons sending and receiving, including receipt of courtesy copies, the e-mails listed on the privilege log.

On February 9, 2005, after failing to receive the requested information, the court ordered AT&T to submit the additional information by February 11, 2005.  *See* doc. 381. AT&T finally provided a list of personnel mentioned in the purportedly privileged documents.

On April 6, 2005, after conducting an extensive review of the thirty-five documents at issue, the privilege log, and the personnel listing, the court issued an order noting several deficiencies in AT&T's log, observing that it was unclear whether the deficiencies were the result of "a litigation tactic, lax case management, or some other reason."  *See* doc. 415.[1] AT&T was ordered to show cause why the court should not find that, with respect to all of the messages in the subject e-mail "strands"[2] (except for the thirty-five that were specifically

---

[1] For the reasons explained below, the court now believes it mainly was an overly aggressive, imprudent litigation tactic.

[2] As explained in the court's April 6, 2005 order, an e-mail strand (or string) occurs where the printed e-mail actually consists of more than one message, usually formatted with the most recent message first.

listed on the privilege log), and with respect to the documents which contain names or groups that were not identified by AT&T, any claims of privilege or protection have been waived. The court also ordered AT&T to provide plaintiffs and the court with a more complete privilege log as to the withheld documents at issue.  On April 18, 2005, AT&T responded to the show cause order and provided an expanded privilege log.  *See* doc. 419.  The court is now ready to rule.

In its response to the court's show cause order, AT&T has grouped the 131 e-mails contained within the thirty-five strands into five separate categories.  Category 1 consists of thirty-five e-mails that are the first or only e-mail in a strand.  Category 2 consists of seventeen e-mails that are duplicates of one of the thirty-five e-mails in Category 1. Category 3 consists of twenty-six e-mails that appear on other privilege logs where they were the first or only e-mail in a strand.  Category 4, most notably, consists of twenty-nine e-mails that had not been separately listed on any previous AT&T privilege log.  Category 5 consists of twenty-four e-mails for which AT&T now has conceded, if analyzed as separate, freestanding e-mails, cannot properly be defended as to claims of privilege; AT&T represents that it will no longer claim that these e-mails are privileged and will produce them to plaintiffs, along with any others as to which the court sustains plaintiffs' motion to compel.

## II.   Analysis.

A.      General Procedures for Asserting Privilege.

The court initially must address the issue of whether AT&T has waived any applicable privilege or protection as to the twenty-nine e-mails in Category 4.  Of course, a party objecting to discovery on grounds of privilege has the burden to establish the privilege.[3]  Although implicitly ignored in the approach taken by AT&T, the Federal Rules of Civil Procedure require a fairly detailed and specific showing to withhold discovery on privilege grounds.[4]  The law is well-settled that, if a party fails to make the required showing, by not producing a privilege log or by providing an inadequate one, the court may deem the privilege waived.[5]  Of course, minor procedural violations, good faith attempts at compliance, and other such mitigating circumstances bear against finding waiver.[6]

---

[3] *Berroth v. Kansas Farm Bureau Mut. Ins. Co.*, 205 F.R.D. 586, 589 (D. Kan. 2002) (citing *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550 (10th Cir. 1995)).

[4] *See* Fed. R. Civ. P. 26(b)(5) ("When a party withholds information ... by claiming that it is privileged ..., the party shall make the claim expressly and shall describe the nature of the documents, communications, or things ... in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.").

[5] *Employers Reinsurance Corp. v. Clarendon Nat'l Ins.* Co., 213 F.R.D. 422, 428 (D. Kan. 2003) (citing *Haid v. Wal-Mart, Inc.*, No. 99-4186, 2001 WL 964102, at *2  (D. Kan. June 25, 2001); *Starlight Int'l, Inc. v. Herlihy*, No. 97-2329, 1998 WL 329268, at *3 (D. Kan. June 16, 1998)).

[6] *See Heavins v. Owens-Corning Fiberglass*, No. 02-2572, 2004 WL 316072, at *1 (D. Kan. Feb. 3, 2004).

AT&T argues that the court should not find a waiver of any privilege or protection as to the e-mails at issue because AT&T operated under the good faith belief that an e-mail strand on a topic, regardless of how many individual e-mails are involved, constitutes a single document requiring only a single privilege log entry.  For the reasons explained below, the court respectfully disagrees with AT&T on the privilege log issue, but the court concludes that a waiver of privilege should not be declared.

AT&T cites cases from other districts and some law review articles which supposedly stand for the proposition that, because an e-mail strand is more akin to a "conversation," an e-mail strand should be treated as a single document for privilege analysis.[7]  Notably, however, none of these cases and articles provides any in-depth analysis.  As a result, they are unpersuasive in the context of the dispute now before the court.  The court believes that AT&T has construed these purported authorities too broadly and loosely.  And, after extensive research, the court has been unable to find any cases which do support the aggressive position taken here by AT&T.

The court concurs with AT&T to the extent it points out that electronic discovery is a rapidly evolving area in which litigants (and judges) often have little or conflicting guidance.  And this is certainly the case with regard to the specific issue now before the

---

[7] *See, e.g.,  Freeport McMoran Sulphur, LLC v. Mike Millen Energy Equip., Inc.*, 2004 WL 1299042, at *11-21 (E.D. La. June 3, 2004); *United States v. Segal*, 2004 WL 830438, at *6 (N.D. Ill. Apr. 16, 2004); and Jonathan B. Ealy & Aaron M. Schutt, *"What - - if Anything - - Is an E-Mail?  Applying Alaska's Civil Discovery Rules to E-Mail Production,"* 19 Alaska L.R. 119, 122 (2002).

court.  But with no cases directly on point, the court finds that AT&T's decision to treat each e-mail strand on a topic as a single document, requiring only a single privilege log entry, although arguably reasonable, was very risky.  Nevertheless, under the unique circumstances of this particular litigation, the court is unwilling to find that AT&T has waived any privilege or protection which may be applicable to the twenty-nine e-mails in Category 4.

Finally, with regard to the efforts made by AT&T, it should be noted that, in the April 6, 2005 order, the court found that AT&T's listing of personnel was incomplete. The court emphasized the well-established principle of law that the attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party.[8] The court also stressed that it could find AT&T had failed to provide the information required to determine whether an individual is within the scope of the attorney-client privilege.

AT&T claims it has complied with the court's order by providing the requested information for as many of the AT&T personnel it could locate.  AT&T candidly concedes, though, that it was not able to identify the title or role for every person involved, because in many instances the AT&T employee left the company years ago.  The court will address any possible waiver based on this issue in its rulings set forth below.

---

[8] *See United States v. Ryans*, 903 F.2d 731, 741 n. 13 (10th Cir.), *cert. denied*, 498 U.S. 855 (1990).

B.      Specific Procedures for Protecting Assertions of Privilege for E-Mail Strands.

As earlier indicated, is AT&T's stated position that an e-mail strand is akin to minutes of a meeting or a transcript of a conversation and, therefore, the individual e-mails within a strand should not be separated from one another when evaluating a privilege claim.  This court, however, flatly rejects this argument for three basic reasons.  First, as earlier indicated, the court is unpersuaded by the purported authorities on which AT&T relies in this regard. Second, the court believes the well-established case law regarding privileges and privilege logs provide sufficient (indeed, better) guidance.  And third, and perhaps most importantly, the obvious and unavoidable  byproduct of the rule advanced by AT&T would be stealth claims of privilege which, by their very nature, could <u>never</u> be the subject of a meaningful challenge by opposing counsel or actual scrutiny by a judge; this, in turn, would render Fed. R. Civ. P. 26(b)(5) a nullity.  Obviously, a sufficient (i.e., reasonably detailed) privilege log is vital if litigants and judges are to determine whether documents have been properly withheld from discovery.[9]

"The information provided [in a privilege log] must be sufficient to enable the court to determine whether *each element* of the asserted privilege or protection is satisfied."[10]  The courts have required that a privilege log must include the following information:

---

[9] *Simmons Foods, Inc. v. Willis*, No. 97-4192, 2000 WL 204270, at *5 (D. Kan. Feb. 8, 2000).

[10] *Hill v. McHenry*, No. 99-2026, 2002 WL 598331, at *2 (D. Kan. Apr. 10, 2002) (citing *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 680 (D. Kan. 2000); *Jones v. Boeing Co.*, 163 F.R.D. 15, 17 (D. Kan. 1995)).

1.     A description of the document explaining whether the document is a memorandum, letter, e-mail, etc.;

2.     The date upon which the document was prepared;

3.     The date of the document (if different from # 2);

4.     The identity of the person(s) who prepared the document;

5.     The identity of the person(s) for whom the document was prepared, as well as the identities of those to whom the document and copies of the document were directed, "including an evidentiary showing based on competent evidence supporting any assertion that the document was created under the supervision of an attorney;"

6.     The purpose of preparing the document, including an evidentiary showing, based on competent evidence, "supporting any assertion that the document was prepared in the course of adversarial litigation or in anticipation of a threat of adversarial litigation that was real and imminent;"

        a similar evidentiary showing that the subject of communications within the document relates to seeking or giving legal advice; and

        a showing, again based on competent evidence, "that the documents do not contain or incorporate non-privileged underlying facts;"

7.     The number of pages of the document;

8.     The party's basis "for withholding discovery of the document (i.e., the specific privilege or protection being asserted); and

9.     Any other pertinent information necessary to establish the elements of each asserted privilege."[11]

---

[11] *Hill*, 2002 WL 598331, at *3 (citing *Simmons Foods*, 2000 WL 204270, at *5).

In those instances where each and every separate e-mail within a strand is limited to a distinct and identifiable set of individuals, all of whom are clearly within the attorney-client relationship in which legal advice is being sought or given, listing the e-mail strand as one entry on the privilege log might be regarded as sufficient.  But the position staked out in this case by AT&T totally ignores that many, if not most, e-mail strands present unique issues which usually do not appear in minutes of "meetings" or transcripts of "conversations." First, e-mail strands may span several days, which in and of itself makes them quite different from a meeting or a conversation.  Second, the individuals receiving or being copied on the e-mails within a strand – may and usually do – vary; in some instances, certain individuals may receive only a portion of the strand while others may receive the entire strand, and in other instances an e-mail may be sent or copied to an individual or group of individuals who are not part of the attorney-client relationship, thus waiving the privilege.  Third, one e-mail within a strand in which counsel are senders, recipients, or being copied may contain entirely factual and thus non-privileged information, while another e-mail within the same strand may quite clearly seek or render legal advice.

As aptly illustrated by the thirty-five e-mail strands at issue in the case at bar, and as now acknowledged by AT&T, many of the strands contain individual e-mails that clearly do not meet the elements of the attorney-client privilege or work product protection.[12]  This

---

[12] Had the court not pressed this issue, nearly twenty percent of the documents AT&T initially claimed as privileged would have been improperly withheld from plaintiffs during the discovery phase of this case.  Although the court has no way of knowing at this juncture,

acknowledgment by AT&T, of course, came long after the court ordered a separate listing, thus requiring AT&T to re-evaluate whether each e-mail in the strand in fact was subject to the attorney-client privilege or work product protection.

The undersigned magistrate judge is only five years removed from private practice. He is acutely sensitive to the fact that, as a practical matter, requiring each e-mail within a strand to be listed separately on a privilege log is a laborious, time-intensive task for counsel. And, of course, that task adds considerable expense for the clients involved; even for very well-financed corporate defendants such as those in the case at bar, this is a very significant drawback to modern commercial litigation.  But the court finds that adherence to such a procedure is essential to ensuring that privilege is asserted only where necessary to achieve its purpose, e.g., in the case of the attorney-client privilege, protecting disclosures made to obtain legal advice which might not have been made absent the existence of the privilege.[13] In any event, the court strongly encourages counsel, in the preparation of future privilege logs, to list each e-mail within a strand as a separate entry.  Otherwise, the client may suffer a waiver of the attorney-client privilege or work product protection (and the lawyer may later draw a claim from the client).

C.      Attorney-Client Privilege.

---

all of those documents may be cumulative or one of them may be the proverbial "smoking gun."

[13] *ERA Franchise Sys., Inc. v. Northern Ins. Co.*, 183 F.R.D. 276, 280 (D. Kan. 1998).

The following legal standards have been applied when reviewing the e-mails at issue to determine the applicability of the claimed privileges. Since this action arises under a federal statutory scheme, federal law provides the rule of decision as to application of the attorney-client privilege.[14]   Under federal common law, the essential elements of the attorney-client privilege are: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except if the protection be waived.[15]

The privilege "protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor."[16]  The privilege also protects advice given by the lawyer in the course of representing the client.[17] The privilege protects communications with in-house counsel as well as outside attorneys.[18]

---

[14] *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1368-69 (10th Cir. 1997).

[15] *Marten v. Yellow Freight Sys., Inc.*, No. 96-2013, 1998 WL 13244, at * 5 (D. Kan. Jan.6, 1998) (quoting *Great Plains Mut. Ins. Co. v. Mutual Reinsurance Bureau*, 150 F.R.D. 193, 196 n. 4 (D. Kan. 1993)).

[16] *Marten*, 1998 WL 13244, at *6 (quoting *Jones v. Boeing Co.*, 163 F.R.D. 15, 17 (D. Kan. 1995)).

[17] *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981).

[18] *Upjohn*, 449 U.S. at 390.

The privilege, however, "is to be extended no more broadly than necessary to effectuate its purpose."[19]

"Not every communication between an attorney and client is privileged, only confidential communications which involve the requesting or giving of legal advice."[20] "The focal point of the protection afforded by the attorney-client privilege lies with 'communications' between attorneys and their clients."[21] And, although the privilege protects disclosure of substantive communication between attorney and client, "it does not protect disclosure of the underlying facts by those who communicated with the attorney."[22]  There must be a connection between "the subject of the communication and the rendering of legal advice" for the attorney-client privilege to shield the communication from disclosure.[23] Legal advice must predominate for the communication to be protected.[24]  The privilege does

---

[19] *Great Plains Mut. Ins. Co.*, 150 F.R.D. at 196 (citation omitted).

[20] *Burton v. R.J. Reynolds Tobacco Co.*, 175 F.R.D. 321, 327 (D. Kan. 1997) (citing *Fisher v. United States*, 425 U.S. 391, 403 (1976); *United States v. Olano*, 62 F.3d 1180 (9th Cir. 1995)).

[21] *IMC Chemicals, Inc. v. Niro, Inc.*, No. 98-2348, 2000 WL 1466495, at *8-9 (D. Kan.  July 19, 2000) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981)).

[22] *Id.*

[23] *Burton*, 175 F.R.D. at 328.

[24] *Burton v. R.J. Reynolds Tobacco Co., Inc.,* 170 F.R.D. 481, 484 (D. Kan. 1997)(citing *Leonen v. Johns-Manville*, 135 F.R.D. 94 (D.N.J. 1990)).

not apply where the legal advice is merely incidental to business advice.[25]  There is also a distinction between a conference with counsel and a conference at which counsel is present; the mere presence of counsel at a meeting does not make all communications during the meeting privileged.[26]

A general description of the work performed by the attorney is not protected by the privilege.[27]  Acts or services performed by an attorney during the course of the representation are not within the privilege because they are not communications.[28]  The subject matter of meetings with an attorney, the persons present, the location of the meetings, or the persons arranging the meetings are also not protected by the privilege.[29]  Nor is information privileged simply because it comes from an attorney.[30]  The mere fact that one is an attorney does not render everything he does for or with the client privileged.[31]  Minutes of meetings

---

[25] *Id.* (citing *In re Brand Name Prescription Drugs Antitrust Litig.*, 1995 WL 354268 (N.D. Ill. 1995)).

[26] *Id.* (citing *Oil Chem. & Atomic Workers Int'l Union v. Am. Home Products*, 790 F.Supp. 39 (D.P.R.1992)).

[27] *Id.* (citing *United States v. Olano*, 62 F.3d 1180 (9th Cir. 1995)).

[28] *Id.* (citing *United States v. Brickey*, 426 F.2d 680 (8th Cir. 1970)).

[29] *Id.* (citing *United States v. Pappadio*, 346 F.2d 5 (2nd Cir. 1965)).

[30] *Id.* (citing *United States v. Defazio*, 899 F.2d 626 (7th Cir. 1990); *In re Brand Name Prescription Drugs Antitrust Litig.*, 1995 WL 354268 (N.D. Ill. 1995)).

[31] *Id.* (citing *United States v. Bartone*, 400 F.2d 459 (6th Cir. 1968)).

attended by attorneys are not automatically privileged, and business documents sent to attorneys are not automatically protected.[32]

Some courts have been influenced by whether the work being performed at the time of the communication required the services of an attorney or could be performed equally well by a non-lawyer.[33]  The fact that the client chose to channel the work through an attorney rather than perform the work with non-legal personnel does not provide the basis for a claim of privilege.[34]  Also, the privilege does not apply when an attorney is merely acting as a conduit for information.[35]

Drafts of documents to be submitted to third parties, while prepared by counsel, are not generally privileged.  In any event, submission of documents to a third party outside the attorney-client relationship removes any cloak of privilege.[36]

D.     Work Product Protection.

"'[A] party may obtain discovery of documents and tangible things ... prepared in anticipation of litigation or for trial by or for another party or by or for that other party's

---

[32] *Id.* (citing *Simon v. G.D. Searle & Co.*, 816 F.2d 397 (8th Cir. 1987)).

[33] *Id.* (citing *Leonen v. Johns-Manville*, 135 F.R.D. 94 (D.N.J. 1990); *Oil Chem. & Atomic Workers Int'l Union v. American Home Prods.*, 790 F.Supp. 39 (D.P.R. 1992)).

[34] *Id.* (citing *U.S. ex rel. Stone v. Rockwell Int'l Corp.*, 144 F.R.D. 396 (D. Colo. 1992)).

[35] *Id.*

[36] *Id.* (citing *United States Postal Serv. v. Phelps Dodge Refining Corp.*, 852 F.Supp. 156 (E.D.N.Y. 1994)).

representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means."[37]  "The 'in anticipation of litigation' element of the work-product doctrine focuses upon the motivating purpose behind creating the documents."[38]  To invoke the doctrine, a party must show that the document was prepared principally or exclusively to assist in anticipated or ongoing litigation.[39]

AT&T claims that it has been involved in regulatory proceedings and litigation involving the USF since the inception of the program in 1998 and has created numerous documents in anticipation of such regulatory proceedings and litigation.  AT&T boldly asserts that, as a matter of law, it has no duty to specify for which regulatory proceeding or litigation a document was prepared.  In support of this assertion, AT&T cites the decision of the Tenth Circuit Court of Appeals in *Frontier Ref., Inc. v. Gorman-Rupp, Inc.*[40]  The undersigned magistrate judge, however, respectfully disagrees because, as explained below, AT&T infers much more from *Frontier* than is warranted.

---

[37] *Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 703 (10th Cir. 1998)(citing Fed. R. Civ. P. 26(b)(3)).

[38] *Raytheon Aircraft Co. v. U.S. Army Corps of Eng'rs*, 183 F. Supp. 1280, 1288 (D. Kan 2001)(citation omitted).

[39] *Id.*

[40] 136 F.3d 695, 703 (10th Cir. 1998).

A careful reading of *Frontier* shows that the Tenth Circuit merely held that the work product doctrine may apply not only to underlying litigation but also extend to subsequent, related litigation, e.g., seeking indemnity for expenses incurred in the prior litigation.  In *Frontier*, the Tenth Circuit did <u>not</u> rule that the party seeking to invoke the work product protection could simply rely on a blanket assertion that a document was "prepared in anticipation of litigation."  Instead, *Frontier* is entirely consistent with the numerous cases in the District of Kansas that hold that a party seeking to invoke the work product protection must establish that the threat of litigation was both real and imminent.[41]

As to certain documents, specifically addressed below, AT&T failed to meet its burden establishing that the documents were prepared in anticipation of litigation.[42]

E.      Application.

Mindful of the principles reviewed above, and having completed its *in camera* review, the court now will rule on the documents at issue as grouped in categories by AT&T.  First, as to the following e-mails within Category 5, the court simply notes that AT&T has withdrawn its objections:

---

[41] *See, e.g., Raytheon*, 183 F.Supp. 2d 1288; and *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 683 (D. Kan. 2000).

[42] Moreover, AT&T has not cited any authority that would directly support the proposition that regulatory proceedings are considered "litigation" for purposes of the work product doctrine.  And the court has not found any Tenth Circuit precedent that would support that proposition. In any event, even if the court were to consider regulatory proceeding as such, AT&T still has failed to satisfy its burden in the specific instances noted later in this order.

ATT PRIV 013267(D); 013300(C); 013370(B); 013375(C) &
(D); 013574(C); 013699(B); 013786(E); 013989(C), (D), (E), &
(F); 013990(B), (C), (D), & (E); 013991(C), (D), & (E);
013992(B), (C), & (D); 014228(F); and 014229(D)

Next, as to the following e-mails within Categories 2 and 3, which are duplicates of e-mails that appear in multiple documents, the court will only rule on the original e-mail:

ATT PRIV 013574(A), (B), (D), (E), (F), (G), (H), & (I);
013696(C), (D), (E), (F), & (G); 013699(A),(C),(D),(E),(F),
(G), & (H); 013704(A), (B), (C), & (D); 013705(A);
013736(D), (E), & (F); 013736(D), (E), & (F); 013990(A);
013992(A); 014229(A), (B), &(C); and 014250(B).

And finally, as to the remaining e-mails within Categories 1 and 4, the court rules as follows:

ATT PRIV 013264(A)

AT&T objects to production of this e-mail based on attorney-client privilege and attorney work product protection. These objections are overruled. The subject matter of the e-mail is not related to seeking or giving legal advice, and therefore is not privileged. Further, as to AT&T's claim of work product protection, there is no mention in the e-mail of any particular pending or anticipated litigation, or any showing by AT&T that the e-mail was created in connection with any particular pending or imminent anticipated litigation.

ATT PRIV 013267(A), (B), (C), (E), and (F)

AT&T objects to production of these e-mails based on attorney-client privilege and attorney work product protection.  The court finds that these e-mails are subject to the attorney-client privilege as asserted by AT&T and therefore are not discoverable.  The court, as a result, need not address whether these e-mails contain work product.

ATT PRIV 013267(G), (H), (I), and (J)

AT&T objects to production of these e-mails based on attorney-client privilege and attorney work product protection.  These objections are overruled.  The subject matter of the e-mails is not related to seeking or giving legal advice and therefore is not privileged.  Further, as to AT&T's claim of work product protection, there is no mention in the e-mails of any particular pending or anticipated litigation, nor any showing by AT&T that the e-mails were created in connection with any particular pending or imminent anticipated litigation.

ATT PRIV 013279(A), (B), & (C)

AT&T objects to production of these e-mails based on attorney-client privilege and attorney work product protection.  The court finds that these e-mails are subject to the attorney-client privilege as asserted by AT&T and therefore are not discoverable.  The court, as a result, need not address whether these e-mails contain work product.

ATT PRIV 013293(A)

AT&T objects to production of this e-mail based on attorney-client privilege and attorney work product protection.  These objections are overruled.  The subject matter of this

e-mail is not related to seeking or giving legal advice.  Further, AT&T has failed to provide

the court with any information that would be adequate to conclude that recipient J.R. Wood

was in a position to have been deemed within the attorney-client relationship.  The court,

therefore, finds the e-mail is not privileged.

Further, as to AT&T's claim of work product protection, there is no mention in this

e-mail of any particular pending or anticipated litigation, nor any showing by AT&T that the

e-mail was created in connection with any particular pending or imminent anticipated

litigation.

ATT PRIV 13300(A) & (B)

AT&T objects to production of these e-mails based on attorney-client privilege and

attorney work product protection.  These objections are overruled.  The subject matter of

these e-mails is not related to seeking or giving legal advice and therefore is not privileged.

Further, as to AT&T's claim of work product protection, there is no mention in these e-mails

of any particular pending or anticipated litigation, nor any showing by AT&T that these

e-mails were created in connection with any particular pending or imminent anticipated

litigation.

ATT PRIV 013306(A), (B), & (C); ATT PRIV 013325(A); ATT PRIV 013370(A);
and ATT PRIV 013375(A) & (B)

AT&T objects to production of these e-mails based on attorney-client privilege and

attorney work product protection.  The court finds that these e-mails are subject to the

attorney-client privilege as asserted by AT&T and therefore are not discoverable.  The court, as a result, need not address whether these e-mails contain work product.

ATT PRIV 013641(A), (B), & (C) and ATT PRIV 013655(A) & (B)

AT&T objects to production of these e-mails based on attorney-client privilege and attorney work product protection.  These objections are overruled.  The subject matter of these e-mails is not related to seeking or giving legal advice and therefore is not privileged.

Further, as to AT&T's claim of work product protection, there is no mention in these e-mails of any particular pending or anticipated litigation, nor any showing by AT&T that these e-mails were created in connection with any particular pending or imminent anticipated litigation.

ATT PRIV 013655(C)

AT&T objects to production of this e-mail based on attorney-client privilege and attorney work product protection.  The court finds that this e-mail is subject to the attorney-client privilege as asserted by AT&T and therefore is not discoverable.  The court, as a result, need not address whether this e-mail contains work product.

ATT PRIV 013696(A) & (B)

AT&T objects to production of these e-mails based on attorney-client privilege and attorney work product protection.  These objections are overruled.  The subject matter of these e-mails is not related to seeking or giving legal advice and therefore is not privileged. Further, as to AT&T's claim of work product protection, there is no mention in these e-mails

of any particular pending or anticipated litigation, nor any showing by AT&T that these e-mails were created in connection with any particular pending or imminent anticipated litigation.

ATT PRIV 013736(A) & (C)

AT&T objects to production of these e-mails based on attorney-client privilege and attorney work product protection.  The court finds that these e-mails are subject to the attorney-client privilege as asserted by AT&T and therefore are not discoverable.  The court, as a result, need not address whether these e-mails contain work product.

ATT PRIV 013736(B)

AT&T objects to production of this e-mail based on attorney-client privilege and attorney work product protection.  The court finds that this e-mail was created in connection with pending or imminent anticipated litigation and is therefore protected work product.  The court, as a result, need not address whether this e-mail is also protected by attorney-client privilege.

ATT PRIV 013743(A)

AT&T objects to production of this e-mail based on attorney-client privilege and attorney work product protection.  These objections are overruled.  The subject matter of this e-mail is not related to seeking or giving legal advice.  Further, this e-mail was sent to two distribution groups (WhatsNewinKMS@ems.att.com and WinklerDistrict@ems.att.com), and AT&T has not provided the court with adequate information to conclude that all recipients

were in positions to have been deemed within the attorney-client relationship.  The court, therefore, finds the e-mail is not privileged.

Further, as to AT&T's claim of work product protection, there is no mention in this e-mail of any particular pending or anticipated litigation, nor any argument from AT&T that this e-mail was created in connection with any particular pending or imminent anticipated litigation.

ATT PRIV 013764(A), (B), & (C)

AT&T objects to production of these e-mails based on attorney-client privilege and attorney work product protection.  These objections are overruled.  The subject matter of these e-mails is not related to seeking or giving legal advice.  Further, the initial e-mail in this strand was sent to a distribution group (Accessreformteam@ems.att.com), and AT&T has not provided the court with information adequate to conclude that all recipients were in positions to have been deemed within the attorney-client relationship.  The court, therefore, finds the e-mail is not privileged.

Further, as to AT&T's claim of work product protection, there is no mention in these e-mails of any particular pending or anticipated litigation, nor any showing by AT&T that these e-mails were created in connection with any particular pending or imminent anticipated litigation.

ATT PRIV 013786(A), (B), (C), & (D)

AT&T objects to production of these e-mails based on attorney-client privilege and attorney work product protection.  These objections are overruled.  The subject matter of these e-mails is not related to seeking or giving legal advice.  Further, AT&T has failed to provide the court with any information that would be adequate to conclude that Denis O'Loughlin, who was copied on this e-mail, was in a position to have been deemed within the attorney-client relationship.  The court, therefore, finds the e-mail is not privileged.  Further, as to AT&T's claim of work product protection, there is no mention in these e-mails of any particular pending or anticipated litigation, nor any showing by AT&T that these e-mails were created in connection with any particular pending or imminent anticipated litigation.

ATT PRIV 013807(A), (B), (C), & (D)

AT&T objects to production of this e-mail based on attorney-client privilege and attorney work product protection.  The court finds that these e-mails are subject to the attorney-client privilege as asserted by AT&T and therefore are not discoverable.  The court thus need not address whether these e-mails contain work product.

ATT PRIV 013896(A), (B), (C), (D), & (E)

AT&T objects to production of this e-mail based on attorney-client privilege and attorney work product protection.  The court finds that these e-mails are subject to the

attorney-client privilege as asserted by AT&T and therefore are not discoverable.  As a result, the court need not address whether these e-mails contain work product.

ATT PRIV 013896(F)

AT&T objects to production of this e-mail based on attorney-client privilege and attorney work product protection.  These objections are overruled.  The subject matter of this e-mail is not related to seeking or giving legal advice and therefore is not privileged.  Further, as to AT&T's claim of work product protection, there is no mention in this e-mail of any particular pending or anticipated litigation, nor any showing by AT&T that this e-mail was created in connection with any particular pending or imminent anticipated litigation.

ATT PRIV 013935(A) & (B)

AT&T objects to production of these e-mails based on attorney-client privilege and attorney work product protection.  These objections are overruled.  The subject matter of these e-mails is not related to seeking or giving legal advice.  Further, AT&T has failed to provide the court with information adequate to conclude that several recipients of these e-mails, namely, Tim Moreau, Robert Cassano, Pamela Blue, K. Brown, Anne Brewer, and Lou Zecca, were in positions to have been deemed within the attorney-client relationship. The court, therefore, finds these e-mails are not privileged.

Further, as to AT&T's claim of work product protection, there is no mention in these e-mails of any particular pending or anticipated litigation, nor any showing by AT&T that

these e-mails were created in connection with any particular pending or imminent anticipated litigation.

ATT PRIV 013989 (A) & (B)

AT&T objects to production of these e-mails based on attorney-client privilege and attorney work product protection.  These objections are overruled.  The subject matter of these e-mails is not related to seeking or giving legal advice and therefore is not privileged.  Further, as to AT&T's claim of work product protection, there is no mention in these e-mails of any particular pending or anticipated litigation, nor any showing by AT&T that these e-mails were created in connection with any particular pending or imminent anticipated litigation.

ATT PRIV 013991(A) & (B)

AT&T objects to production of these e-mails based on attorney-client privilege and attorney work product protection.  These objections are overruled.  The subject matter of these e-mails is not related to seeking or giving legal advice and therefore is not privileged.  Further, as to AT&T's claim of work product protection, there is no mention in these e-mails of any particular pending or anticipated litigation, nor any showing by AT&T that these e-mails were created in connection with any particular pending or imminent anticipated litigation.

ATT PRIV 014097(A)

AT&T objects to production of this e-mail based on attorney-client privilege and attorney work product protection.  These objections are overruled.  The subject matter of this e-mail is not related to seeking or giving legal advice and therefore is not privileged.  Further, as to AT&T's claim of work product protection, there is no mention in this e-mail of any particular pending or anticipated litigation, nor any showing by AT&T that this e-mail was created in connection with any particular pending or imminent anticipated litigation.

ATT PRIV 014106(A)

AT&T objects to production of this e-mail based on attorney-client privilege and attorney work product protection.  The court finds that this e-mail is subject to the attorney-client privilege as asserted by AT&T and therefore is not discoverable.  The court thus need not address whether this e-mail contains work product.

ATT PRIV 014208(A) & (B)

AT&T objects to production of these e-mails based on attorney-client privilege and attorney work product protection.  The court finds that these e-mails are subject to the attorney-client privilege as asserted by AT&T and therefore are not discoverable.  The court thus need not address whether these e-mails contain work product.

ATT PRIV 014223(A)

AT&T objects to production of this e-mail based on attorney-client privilege and attorney work product protection.  The court finds that this e-mail is subject to the

attorney-client privilege as asserted by AT&T and therefore is not discoverable.  As a result, the court need not address whether this e-mail contains work product.

ATT PRIV 014228(A), (B), (C), (D), & (E)

AT&T objects to production of these e-mails based on attorney-client privilege and attorney work product protection.  The court finds that these e-mails are subject to the attorney-client privilege as asserted by AT&T and therefore are not discoverable.  As a result, the court need not address whether these e-mails contain work product.

ATT PRIV 014239(A), (B), (C), & (D)

AT&T objects to production of these e-mails based on attorney-client privilege and attorney work product protection.  These objections are sustained and therefore these e-mails need not be produced.

ATT PRIV 014250(A)

AT&T objects to production of this e-mail based on attorney-client privilege and attorney work product protection.  These objections are overruled.  The subject matter of this e-mail is not related to seeking or giving legal advice and therefore is not privileged.  Further, as to AT&T's claim of work product protection, there is no mention in this e-mail of any particular pending or anticipated litigation, nor any showing by AT&T that this e-mail was created in connection with any particular pending or imminent anticipated litigation.

III.   Order.

In consideration of the foregoing,

IT IS HEREBY ORDERED:

1.      Plaintiffs' motion to compel defendant AT&T Corporation to produce documents (**doc. 333**) is granted in part and denied in part.

2.      By **August 2, 2005**, AT&T shall produce to plaintiffs copies of all e-mails as to which objections have been withdrawn or overruled.

Dated this 26th day of July, 2005, at Kansas City, Kansas.

_____
James P. O'Hara
U.S. Magistrate Judge