IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

IN RE: UNIVERSAL SERVICE FUND          )
TELEPHONE BILLING                      )
PRACTICES LITIGATION                   )
                                       )
                                       )   Case No. 02-1468-JWL
This Order Relates to All Cases        )

## ORDER

Pursuant to Fed. R. Civ. P. 26(c), this case comes before the court on the motion of

defendant Sprint Communications Company, L.P. for a protective order preventing plaintiffs

from deposing its second-highest ranking corporate officer – president and chief operating

officer Len J. Lauer (**doc. 407**).  In the alternative, Sprint requests that, if Mr. Lauer's

deposition is allowed to proceed, it should be limited by the court to only two hours.  The

court has reviewed the memorandum filed in support of Sprint's motion (doc. 408),

plaintiffs' sealed response (doc. 420), and Sprint's sealed reply (doc. 432).  For the reasons

explained below, Sprint's motion is granted in part and denied in part.

Fed. R. Civ. P. 26(c)(4) provides that

> for good cause shown, the court . . . may make any order which
> justice requires to protect a party or person from annoyance,
> embarrassment, oppression, or undue burden or expense,
> including . . . that certain matters not be inquired into, or that the
> scope of the disclosure or discovery be limited to certain
> matters[.]

Of course, the decision whether to enter a protective order lies within the court's discretion.[1]

Under Rule 26(c), the party seeking the protective order must demonstrate "good cause,"[2]

and this requires "a particular and specific demonstration of fact, as distinguished from

stereotyped and conclusory statements."[3]

In this case, Sprint asserts that Mr. Lauer never has been involved with setting the

rates for the Carrier Universal Service Charge ("CUSC") that was charged to Sprint's

business customers.  Further, Sprint asserts that Mr. Lauer was only kept generally advised

of regulatory developments regarding the Universal Service Fund ("USF") directly at issue

in this litigation and of the CUSC that Sprint charged to its business customers each quarter.

Sprint also argues that any general knowledge Mr. Lauer might have is neither unique nor

superior to that of lower level employees who have either already been deposed or are

scheduled to be deposed. And finally, Sprint claims that Mr. Lauer's heavy corporate

responsibilities place extreme demands on his time, and therefore a deposition would be

unduly burdensome and would constitute annoyance and harassment.

In response, plaintiffs argue that certain discovery documents and prior deposition

---

[1] Fed. R. Civ. P. 26(c)(4); *Thomas v. IBM*, 48 F.3d 478, 482 (10th Cir. 1995).

[2] Fed. R. Civ. P. 26(c); *Day v. Sebelius*, 227 F.R.D. 668, 677 (D. Kan. 2005) (citations omitted); *Simpson v. Home Depot, Inc.*, No. 00-2285, 2002 WL 485661, at *1 (D. Kan. Mar. 7, 2002) (citations omitted); *Wilson v. Olathe Bank*, 184 F.R.D. 395, 396 (D. Kan. 1999) (citations omitted).

[3] *Day v. Sebelius*, 227 F.R.D. at 677 (citing *Bryan v. Eichenwald*, 191 F.R.D. 650, 651 (D. Kan. 2000) (citations omitted)).

testimony point to high executive-level decision-making concerning the CUSC rate. Plaintiffs assert that only someone at or above Mr. Lauer's position within Sprint can answer their questions regarding how the decision was made to pass the USF charge specifically at issue in this litigation on to Sprint customers. Additionally, plaintiffs argue that Mr. Lauer was directly involved in USF decisions while serving in several positions before his promotion to chief operating officer. And lastly, plaintiffs point out that there are no procedural reasons to deny the deposition of Mr. Lauer, and that Sprint has not shown Mr. Lauer would suffer severe hardship or undue burden if deposed.

Based on the limited record presented by the parties in connection with this motion, the court generally agrees with plaintiffs that Mr. Lauer may have unique and/or superior knowledge regarding CUSC rate decisions. The discovery documents attached to plaintiffs' reply, and Mr. Lauer's own admissions in the "know-nothing" affidavit, reveal that he was present for at least two discussions of the CUSC, and that he was sent several e-mails about rate changes. At a minimum, plaintiffs have shown that someone at or above Mr. Lauer's position within Sprint is a proper target for deposition. And even though Mr. Lauer claims he has no knowledge of the facts concerning this case, the record suggests that plaintiff should be allowed some reasonable opportunity to test this lack-of-knowledge claim.[4]

Sprint also argues that lower-level employee depositions should be exhausted before

---

[4] *Horsewood v. Kids "R" Us*, No. 92-2441, 1998 WL 526589, at *6 (D. Kan. Aug. 13, 1998).

Mr. Lauer is deposed. However, the standard set forth by the Tenth Circuit in *Thomas v.*

*IBM*[5] only requires that plaintiffs show they have made some attempt to demonstrate that the

information they seek to gather cannot be obtained from lower level employees.  Because

plaintiffs have clearly made that showing, and because a significant number of lower-level

depositions already have been conducted, the court believes that the deposition of Mr. Lauer

should be allowed.  The court notes here that "apex" deposition guidelines[6] cited by Sprint

have not been adopted by the Tenth Circuit, and therefore they are not dispositive of the

instant motion.[7]

Finally, the court agrees with plaintiffs that Sprint has failed to prove severe hardship

or undue burden.  Courts generally disfavor protective orders, and "absent extraordinary

circumstances, courts rarely grant a protective order that totally prohibits a deposition."[8]  The

movant's burden to prove particular and specific facts is a heavy one.  In the instant motion,

Sprint's claim that Mr. Lauer is a busy man is neither specific nor particularized.  Plaintiffs

do not seriously quarrel with the proposition that Mr. Lauer is a very busy man, by virtue of

---

[5] 48 F.3d at 483-84.

[6] *Baine v. General Motors Corp.*, 141 F.R.D. 332 (M.D. Ala. 1991) (requiring a showing of unique personal knowledge and proof that alternative means of discovery had already been employed before deposition of "apex" officer could be conducted).

[7] However, the court believes plaintiffs have also met the higher standards set forth in *Baine*.

[8] *Pepsi-Cola Bottling Co. v. Pepsico, Inc.*, No. 01-2009, 2002 WL 922082, at *1 (D. Kan. May 2, 2002) (citing *Cotracom Commodity Trading Co. v. Seaboard Corp.*, No. 97-2391, 2000 WL 796142, at *2 (D. Kan. June 14, 2000).

the fact that he is the "second-in-command" of a multibillion dollar conglomerate.  But that only goes so far.  While Mr. Lauer's position as president and chief operating officer of Sprint obviously warrants some consideration, the record presented here simply does not support the proposition that a limited deposition in the District of Kansas would be unduly burdensome or cause severe hardship to Mr. Lauer or Sprint.  That is, "[h]ighly placed executives are not immune from discovery, and the fact that an executive has a busy schedule cannot shield that witness from being deposed."[9]  Nevertheless, at least given the nature of the discovery documents submitted by plaintiffs, the court is wholly unpersuaded that a lengthy deposition of one of Sprint's most senior executives is warranted here.  Therefore, although plaintiffs will be allowed to depose Mr. Lauer, his deposition shall be limited to two hours.  Consistent with this court's deposition guidelines, the parties' attorneys shall confer in good faith concerning the date, time, and place of Mr. Lauer's deposition before a formal deposition notice is served.

IT IS THEREFORE HEREBY ORDERED that Sprint's motion for a protective order (**doc. 407**) is granted in part and denied in part.

Dated this 4th day of August, 2005, at Kansas City, Kansas.

s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge

---

[9] *Six West Retail Acquisition, Inc. v. Sony Theatre Management Corp.*, 203 F.R.D. 98, 102 (S.D.N.Y. 2001) (citations omitted).