IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

IN RE: UNIVERSAL SERVICE FUND            )
TELEPHONE BILLING                        )
PRACTICES LITIGATION                     )
                                         )
                                         )        Case No. 02-1468-JWL
This Order Relates to All Cases          )

## ORDER

This case comes before the court on the motion to compel production of documents

filed by the plaintiffs against defendant AT&T Corporation (**doc. 429**).  The procedural

history of this motion unfortunately is quite detailed and extensive, but still it is necessary

for one to have a clear understanding of the issues presented.

In terms of the primary pleadings, AT&T has filed a response to plaintiffs' motion to

compel (doc. 496), and plaintiffs have replied (doc. 523).  After obtaining leave of court,

AT&T filed a surreply (doc. 532).

On January 9, 2006, the Hon. John W. Lungstrum, Chief Judge, conducted a telephone

status conference with counsel and the undersigned magistrate judge, James P. O'Hara.

During one portion of this conference, the undersigned inquired of plaintiffs whether the

issues raised in the instant motion were moot in light of the representations made by AT&T

in its surreply that all responsive documents had been produced.  Plaintiffs indicated that

AT&T had not in fact fully complied with the document requests in issue.  The undersigned

requested that plaintiffs review AT&T's surreply and then file another brief more specifically

articulating their position.  Plaintiffs have done so (doc. 562).  The court is now prepared to rule.

When plaintiffs initially filed the instant motion to compel, there were five categories of documents that they claimed AT&T had failed to produce.  However, since the filing of the motion on April 29, 2005, the parties agree that the issues have been narrowed to just one category, that is, the so-called "source documents" used by AT&T to create two Universal Service Fund ("USF") summary spreadsheets for this litigation, which spreadsheets AT&T produced in response to plaintiffs' fourth request for production of documents, Nos. 64-68 and 70.

The specific document requests that remain in issue are as follows:

> Request No. 64 seeks "[a]ll electronic data reflecting the total USF charges billed by AT&T to all long distance business customers located in the United States on a monthly or quarterly basis, including any associated file layouts necessary to utilize the data. To the extent such data is not available in electronic form, produce the data in hard copy form."

> Request No. 65 seeks "[a]ll electronic data reflecting the total USF charges billed by AT&T to (1) all long distance residential customers located in the United States and (2) all long distance residential customers located in California, on a monthly or quarterly basis, including any associated file layouts necessary to utilize the data. To the extent such data is not available in electronic form, produce the data in hard copy form."

> Request No. 66 seeks "[a]ll electronic data reflecting the total USF revenues collected by AT&T from all long distance business customers in the United States on a monthly or quarterly basis, including any associated file layouts necessary to utilize the data. To the extent such data is not available in electronic form, produce the data in hard copy form."

Request No. 67 seeks "[a]ll electronic data reflecting the total USF revenues collected by AT&T from (1) all long distance residential customers in the United States and (2) all long distance residential customers located in California, on a monthly or quarterly basis, including any associated file layouts necessary to utilize the data. To the extent such data is not available in electronic form, produce the data in hard copy form."

Request No. 68 seeks "[a]ll electronic data reflecting the total net USF payments by AT&T to USAC on a monthly or quarterly basis, including any associated file layouts necessary to utilize the data. To the extent such data is not available in electronic form, produce the data in hard copy form."

Request No. 70 seeks "[a]ll electronic spreadsheets or similar compilations setting forth all data supporting calculations used to determine or explain your USF surcharge to customers, including data relating to the costs to AT&T of complying with its obligations to the USF program. To the extent such data is not available in electronic form, produce the data in hard copy form."

Initially, AT&T responded to each of these requests by raising various general and specific objections, and by stating that subject to and without waiving its general and specific objections, AT&T had previously produced and would supplement as required all non-privileged documents within its possession, custody, or control that could be located through a good-faith records search.

By letter dated November 4, 2004, AT&T inquired whether plaintiffs would agree to AT&T providing them with electronic spreadsheets containing USF data in response to

plaintiffs' Requests Nos. 64-68 and 70.[1]  Plaintiffs agreed.[2]

On January 14, 2005, plaintiffs sent a letter to AT&T, noting that they had not yet received the electronic spreadsheet as promised.[3]  Plaintiffs reiterated what information they expected the spreadsheet would contain.  Plaintiffs also stated that, "to the extent that the underlying documents used to compile this spreadsheet have not already been produced," AT&T should produce the documents at the same time it produced the spreadsheets.

Over the next couple of months, the parties engaged in a continuous dialogue, oral and written, regarding the status of the production of the spreadsheets by AT&T, as well as the production of the underlying documents.  However, on April 29, 2005, after not receiving the information sought by plaintiffs from AT&T, plaintiffs filed the instant motion to compel.

On May 25, 2005, AT&T sent a letter to plaintiffs "to address the remaining issues in plaintiffs' pending motion to compel."[4]  AT&T indicated that it had documents responsive to the requests that it was ready to produce.  AT&T also indicated that the documents did not

---

[1] *See* letter from Mark B. Blocker ("M. Blocker") to Barbara J. Felt ("B. Felt") (copy attached as Exhibit A to plaintiffs' memorandum in support of their motion to compel (doc. 430)).

[2] The court is unable to locate an exact document, at least from those provided by the parties, that reflects this initial agreement.  However, subsequent documents cited herein evidence such agreement.

[3] *See* letter from B. Felt to M. Blocker (copy attached as Exhibit D to plaintiffs' memorandum in support of their motion to compel (doc. 230)).

[4] *See* letter from M. Blocker to B. Felt (copy attached as Exhibit A to plaintiffs' reply brief in support of their motion to compel (doc. 523)).

include the results of the "2004 true-up[5]" as the "true-up" process had not been completed, and thus, the spreadsheets would need to be revised.  AT&T specifically stated that the sources of the data were AT&T's general ledgers.

On May 26, 2005, plaintiffs responded by letter, noting that they would have to review the spreadsheets to determine if they satisfied the requests in issue.[6]  Plaintiffs also specifically requested that all source documents for this compilation be produced.

On or about June 1, 2005, AT&T produced the spreadsheets.  On June 6, 2005, plaintiffs sent a letter to AT&T, requesting more information about the spreadsheets, and again requesting copies of the source documents.[7]

In a letter from AT&T to plaintiffs, dated June 20, 2005, AT&T responded as follows:

> In both your May 26 and June 6 letters, you mentioned that you are also awaiting production of "source documents." The spreadsheets AT&T has produced generally contain the source information from AT&T's general ledgers, so you now have the source information. There are certain columns where AT&T had to make allocations or derive the spreadsheet numbers from the original source numbers (because no such numbers exist in source form), but for those there are no source documents that contain these numbers.
>
> Moreover, as you may recall, AT&T agreed to create and produce a spreadsheet in lieu of producing all of the source

---

[5] An FCC process for carrier payments.

[6] *See* letter from B. Felt to M. Blocker and Andrew (Drew) M. Amerson ("D. Amerson") (copy attached as Exhibit B to plaintiffs' reply brief in support of their motion to compel).

[7] *See* letter from B. Felt to M. Blocker and D. Amerson (copy attached as Exhibit F to plaintiffs' reply brief in support of their motion to compel).

information, which is contained in AT&T's general accounting ledgers. (*See* Ex. A to the motion to compel). In fact, your correspondence about this issue consistently referred to USF "spreadsheets." (*See* Ex. G to the motion to compel). As we have explained during our meet-and-confer sessions with Vince Esades, these accounting ledgers are massive documents with only selected entries having any relevance to USF; we thus agreed that, in lieu of producing these ledgers, we would create spreadsheets like those produced by Sprint as a compromise. Your request that we now also produce the source data defeats the entire purpose of our agreement to create the spreadsheets. If, however, there are specific pieces of data that you need, we could discuss that, but let me know if the information we have provided is sufficient.[8]

Plaintiffs responded by letter dated June 21, 2005, arguing that AT&T had volunteered to create the spreadsheets in response to the requests, but that plaintiffs had never agreed to accept lawyer-created spreadsheets in lieu of responsive documents.[9] Plaintiffs further argued that it always had been their understanding that the underlying source documents would be produced.  Plaintiffs claimed that, due to the lack of clarity in the spreadsheets, they must be permitted to inspect and examine the source documents.

On July 12, 2005, AT&T provided plaintiffs a CD containing three Excel files.[10] After review, plaintiffs responded to AT&T by letter dated July 19, 2005, raising numerous questions and issues regarding the discrepancies in the data on the spreadsheets and the data

---

[8] *See* letter from M. Blocker to B. Felt (copy attached as Exhibit G to plaintiffs' reply brief in support of their motion to compel).

[9] *See* letter from B. Felt to M. Blocker and Michael P. Doss ("M. Doss") (copy attached as Exhibit H to plaintiffs' reply brief in support of their motion to compel).

[10] *See* letter from A. Amerson to B. Felt (copy attached as Exhibit I to plaintiffs' reply brief in support of their motion to compel).

in the files.[11]  Plaintiffs also specially noted that AT&T had not articulated its position with respect to identifying both the source documents for these spreadsheets and, to the extent the documents had not already been produced, to producing them.

On August 3, 2005, AT&T responded by letter specifically addressing each of the issues and questions raised by plaintiffs.[12]  Most notably, AT&T stated that, "to the extent that we have not already produced source data for the USF spreadsheets, we will agree to do so to the extent such material is reasonably available."

On September 2, 2005, after obtaining several extensions, AT&T filed its brief in opposition to the instant motion to compel.  AT&T argued that it had produced documents that satisfactorily responded to each of the disputes in issue.  AT&T also argued that plaintiffs' questions concerning the nature, content, and meaning of documents that had been produced all were questions appropriately left for future discovery, either by way of interrogatories or depositions, but in any event <u>not</u> as part of the instant motion.  AT&T advised it would supplement its document production with any responsive materials that were subsequently identified.  After filing its responsive brief, AT&T produced additional Excel files to plaintiffs.

On September 29, 2005, after review of the additional documents, plaintiff contacted

---

[11] *See* letter from B. Felt to M. Blocker and M. Doss (copy attached as Exhibit L to plaintiffs' reply brief in support of their motion to compel).

[12] *See* letter from M. Doss to B. Felt (copy attached as Exhibit M to plaintiffs' reply brief in support of their motion to compel).

AT&T by letter.  Again, plaintiffs set out specific examples of the differences between the numbers in the USF spreadsheets and the numbers in the source documents.[13]

On October 7, 2005, during a conference call among counsel, AT&T identified sources for some of the data in the USF spreadsheets, but conceded that much of the source data actually was different than that contained in the USF spreadsheets.  AT&T sent plaintiffs two letters on October 10, 2005, one as a follow-up to the conference,[14] and the second providing additional documents.[15]

Plaintiffs sent AT&T an e-mail on October 11, 2005, detailing their position and requesting a written response by AT&T to three questions: First, did the source documents for the specific numbers in the USF spreadsheets still exist?  Second, if the documents still existed, where were they located?  And third, if the documents did not still exist, why did they no longer exist, and how and when they were disposed of by AT&T?[16]

AT&T responded to plaintiffs' e-mail on October 12, 2005.  But notably, AT&T did <u>not</u> provide any additional information, nor did AT&T directly respond to the specific

---

[13] *See* letter from B. Felt to M. Blocker and D. Amerson (copy attached as Exhibit W to plaintiffs' reply to their motion to compel).

[14] *See* letter from M. Doss to B. Felt (copy attached as Exhibit X to plaintiffs' reply brief in support of their motion to compel).

[15] *See* letter from A. Amerson to B. Felt (copy attached as Exhibit Z to plaintiffs' reply brief in support of their motion to compel).

[16] *See* e-mail from B. Felt to M. Blocker, M. Doss, and D. Amerson (copy attached as Exhibit AA to plaintiffs' reply brief in support of their motion to compel).

questions posed by plaintiffs.[17]

Plaintiffs filed their reply brief in support of the instant motion on October 14, 2005, providing a detailed chronology of the parties' ongoing dialogue regarding the spreadsheets and production of the source documents.  In this reply brief, plaintiffs noted the specific source data which it considered missing.

On October 27, 2005, after obtaining leave of court, AT&T filed its surreply.  AT&T claimed to have fulfilled its obligation to produce documents responsive to the requests in issue and provided specific detail as to its responses to each of the requests.  AT&T also reiterated its assertion that the additional information plaintiffs seek are beyond the scope of the requests in issue and may be the subject of other discovery efforts, such as depositions and "paper" discovery.  Upon the request of the court, as previously discussed, plaintiffs later filed their own surreply in which they again detailed the missing source data.

As previously mentioned, although the preceding chronology is quite lengthy and detailed, the court believes that it is very instructive on how the discovery dispute between plaintiffs and AT&T ultimately should be resolved.  Of course, the gist of AT&T's technical opposition to the instant motion is that the source documents for the spreadsheets simply were not sought by the requests in issue.  However, the record before the court strongly suggests that this argument was not originally asserted by AT&T, but rather was raised "late in the game."  Moreover, the record reflects that AT&T has made various and slightly

---

[17] *See* e-mail from M. Doss to B. Felt (copy attached as Exhibit BB to plaintiffs' reply brief in support of their motion to compel).

differing representations to plaintiffs with regard to what it intended to produce to plaintiffs in response to the requests in issue.  On the other hand, the court finds that record is clear that, from the first time the spreadsheets were mentioned, plaintiffs have continuously and consistently sought the source documents.

Given the above-described state of the record, the court ultimately is unpersuaded by AT&T's argument that the source documents were not within the scope of the requests in issue.  Even if AT&T were technically correct (and as earlier indicated the court finds that AT&T is incorrect), the court is firmly convinced that it would be the antithesis of judicial economy under Fed. R. Civ. P. 1 at this late date to require plaintiffs to independently seek to obtain the missing data through other, separate discovery methods, as has been suggested at times by AT&T.  Rather, consistent with the very broad discretion conferred upon the court under Fed. R. Civ. P. 26(b), and to expedite the resolution of this case, the court hereby orders AT&T to produce all of the source documents containing the missing data set forth on page 6 of plaintiffs' surreply.[18]  Should AT&T be unable to locate the source documents, or should the documents no longer exist, then AT&T shall file an affidavit detailing its good faith efforts to locate the documents and explaining why the documents no longer exist.  In any event, AT&T shall comply with this order by **February 17, 2006**.

IT IS SO ORDERED.

Dated this 31st day of January, 2006, at Kansas City, Kansas.

---

[18] Doc. 562.

_s/ James P. O'Hara_____
James P. O'Hara
U.S. Magistrate Judge