IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

IN RE: UNIVERSAL SERVICE FUND　　　　)
TELEPHONE BILLING PRACTICES　　　　 )
LITIGATION　　　　　　　　　　　　　　 )　　Case No. 02-MD-1468-JWL
　　　　　　　　　　　　　　　　　　　　 )
This Order Relates to All Cases　　　　　　 )
_____)

## **MEMORANDUM AND ORDER**

This matter comes before the Court on the motion by the plaintiff class representative for final approval of the proposed distribution plan (Doc. # 1126) and the motion by counsel for the plaintiff class for attorney fees and expenses (Doc. # 1098). The Court **grants** the motion for final approval of the distribution plan, and it **grants in part and denies in part** counsel's motion for fees and expenses, as set forth below.

　　A.　　*Procedural Background and Notice*

In this class action, two claims were tried to a jury in October and November 2008. First, a class of plaintiffs[1] alleged that defendant AT&T entered into a price-fixing conspiracy with Sprint or MCI in which the carriers agreed to recover from customers at least 100 percent of the carriers' own required payments to the federal Universal Service Fund (USF) program, in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. The

---

[1] For this antitrust claim, the plaintiff class consisted of (a) all business long-distance customers of AT&T, Sprint, or MCI in the United States, and (b) all residential long-distance customers of AT&T in California, who paid a Universal Service Fund charge on or between August 1, 2001, and March 31, 2003.

jury found in favor of AT&T on that claim. Second, a subclass of plaintiffs[2] brought a claim against AT&T for breach of contract under New York law, alleging that AT&T breached its long-distance agreements by assessing those plaintiffs more in USF charges than necessary to recover AT&T's own USF payments into the federal program. The jury found in favor of the plaintiff subclass on that claim, and after the Court ruled on the parties' post-trial motions and plaintiffs accepted a remittitur of the damage award, judgment was entered in favor of the plaintiff subclass in the amount of $16,477,958.41. The Tenth Circuit affirmed the judgment, and AT&T satisfied the judgment, including post-judgment interest, by paying the total amount of $16,893,076.15 for distribution to the plaintiff subclass.

On March 18, 2009, class counsel filed their motion for attorney fees and expenses. After the Tenth Circuit's ruling, counsel filed a supplemental memorandum (Doc. # 1125) in support of that motion, requesting an award of one-third of the distribution fund for attorney fees and $3,064,074.40 for expenses. On December 23, 2010, plaintiff subclass representative Roger Gerdes filed a motion for approval of a notice plan and preliminary approval of a plan for distributing the fund to the subclass. On January 24, 2011, the Court conducted a telephone conference concerning the notice and distribution plans, attended by counsel for both sides, and by Orders of January 24, 2011, and January 27, 2011, the Court approved a plan of notice and preliminarily approved the plan of distribution.

---

[2]For this breach of contract claim, the plaintiff subclass consisted of all residential long-distance customers of AT&T in California who paid a USF charge on or between August 1, 2001, and March 31, 2003.

2

On April 11, 2011, the Court conducted a hearing on the distribution plan and the motion for fees and expenses. Counsel for plaintiffs attended in person, while counsel for AT&T attended by telephone. The Court has received written objections to the distribution plan or the motion for fees and expenses from eleven class members, submitted pro se, but no class member elected to participate in the hearing.

The Court previously approved plaintiffs' proposed method of notice to the subclass of the proposed distribution plan and the Court hearing. The Court again finds that the notice given by the class representative to the subclass was reasonable and appropriate, and represented the best possible method of notice in light of the available data and the costs and benefits of alternative methods of notice. The Court overrules any objections to the notice provided to the subclass.

B. *Distribution Plan*

The Court also overrules any objections to plaintiffs' proposed plan of distribution. The Court finds that the plan is reasonable and appropriate, and represents the best and most practical plan of distribution of the judgment fund. Accordingly, the Court gives its final approval to the distribution plan as previously proposed by plaintiffs and as preliminarily approved by the Court, with one addition. In response to one objection, plaintiffs stated that class counsel would "direct the Claims Administrator to contact any class members who have submitted a claim form without supporting documentation to assist the class member[s] in meeting the requirements" for a claim, and that the Claim Administrator would provide to such class members an attestation in the form of an exhibit attached to plaintiffs' response

3

brief. In light of that statement by counsel, the Court will impose that additional term as a part of the distribution plan, as set forth in plaintiffs' brief.

  *C.* <u>*Incentive Award for Class Representative*</u>

The Court grants plaintiffs' request that subclass representative Roger Gerdes receive an incentive award from the judgment fund in the amount of $10,000. The Court finds that such an award is reasonable and appropriate in this case. *See, e.g.*, *Presley v. Carter Hawley Hale Profit Sharing Plan*, 2000 WL 16437, at *2 (N.D. Cal. Jan. 7, 2000) (approving incentive awards of $25,000). Mr. Gerdes actively participated in the litigation by producing numerous documents, preparing for and submitting to a deposition, consulting with counsel, and traveling from California to attend and testify at the trial. The Court overrules any objections to such an award.

  *D.* <u>*Attorney Fees*</u>

Plaintiffs' counsel seek an award of one-third of the judgment fund as an award of attorney fees. *See Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."); *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994) (awarding a percentage of the fund is the preferred method for award of attorney fees).

The Court finds that such an award, of one-third of the total amount of the judgment fund paid by AT&T, represents a reasonable and appropriate fee in this case, in light of the

4

following factors present here: counsel devoted significant time[3] and labor to a complex case, over a period of more than eight years, involving extensive pretrial motion practice and briefing, trial, posttrial motions, and an appeal; the claim was diligently contested by experienced defense counsel with substantial resources; plaintiffs' counsel are highly skilled and have experience in antitrust class action litigation; counsel obtained a significant award of damages on behalf of the plaintiff subclass; and any fee recovery by counsel was contingent on success in the litigation. *See Gottlieb*, 43 F.3d at 482 n.4 (listing various factors that may be considered for common-fund attorney fee award). The Court also notes that an award of one-third of the fund falls within the range of awards deemed reasonable by courts. *See Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 455 & n.2 (10th Cir. 1988) (noting awards deemed reasonable by other courts ranging from 22 to 37 percent of the fund).

Accordingly, the Court overrules any objections to the fee award requested by plaintiffs' counsel, and it awards plaintiffs' counsel attorney fees from the judgment fund in the amount of $5,631,025.38. Co-Lead Counsel for plaintiffs shall determine the uses and distribution of the fee award in their good faith best judgment.

---

[3]Although plaintiffs' counsel contend that they incurred over $22 million in fees, calculated as a lodestar amount, in litigating this case, the Court does not find that figure to be particularly helpful, in light of the fact that the great majority of counsel's efforts in this case was devoted to the failed antitrust claim on behalf of a nationwide class, which involved a claim for hundreds of millions of dollars. Nevertheless, the Court concludes that counsel did devote a substantial amount of time to the litigation of the successful contract claim, which fact supports a reasonable fee award of one-third of the fund.

5

## E. *Expenses*

Plaintiffs' counsel also request an award of $3,064,074.40 for expenses. Counsel has submitted evidence that all such expenses were reasonably incurred in the litigation of this suit, and the Court agrees that the expenses were reasonably incurred. That amount, however, includes expenses related to the unsuccessful antitrust claim as well as the successful contract claim. For instance, counsel seek over $2.3 million for expenses for expert witnesses, and only a small fraction of the experts' reports and testimony related to the contract claim.

Counsel argue, without citation to supporting authority, that they should be awarded expenses incurred for both claims because the expenses cannot be segregated between the two claims and because the claims were related. Counsel argue that the contract claim subclass would not unfairly bear the expenses incurred by other plaintiffs because the subclass was also a part of the antitrust class. In that regard, counsel argue that the subclass would have incurred these same expenses litigating both claims even without the additional antitrust plaintiffs, with the possible exception of a small amount of expenses (not quantified by counsel), for instance for depositions of plaintiffs not in the subclass or for experts' time in calculating nationwide damages. Thus, counsel argue that because the claims are related and the expenses cannot be segregated, the subclass should not be awarded expenses only for the successful claim, but should recover all of its expenses for the litigation as a whole.

The Court rejects this argument. The Supreme Court has held that a prevailing plaintiff should not necessarily recover all attorney fees incurred if it has prevailed only on

6

some claims; rather, a court must also consider two questions: whether the successful and unsuccessful claims were related, and whether the plaintiff's overall level of success justifies an award based on the total fees incurred. *See Flitton v. Primary Residential Mortg., Inc.*, 614 F.3d 1173, 1176-77 (10th Cir. 2010) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Although *Hensley* involved a statutory award of fees, the Court concludes that the Tenth Circuit would consider the same questions in the case of attorney fees awarded under the common-fund doctrine. *See, e.g.*, *Gottlieb*, 43 F.3d at 482 n.4 (same factors considered for statutory attorney fee awards should also be considered for common-fund attorney fee awards). Moreover, there is no reason not to apply the same analysis to an award of expenses from a common fund. *See, e.g.*, 42 U.S.C. § 1988 (attorney fees awarded under that section may include expert fees).

Thus, the Court first considers whether the subclass's two claims were related. The Tenth Circuit has held "that claims are related if they are based on a common core of facts or are based on related legal theories." *Flitton*, 614 F.3d at 1177 (citing *Jane L. v. Bangerter*, 61 F.3d 1505, 1512 (10th Cir. 1995)). In this case, both claims related to AT&T's USF charges, and each claim required consideration of AT&T's actual costs relating to those charges. The claims differed significantly, however—for the contract claim, plaintiffs simply had to prove that AT&T collected more in USF charges that their USF-related costs; for the antitrust claim, plaintiffs had to show an agreement or conspiracy with another carrier to collect at least 100 percent (not necessarily more than 100 percent) of the carriers' USF costs. Thus, it is not clear that the two claims do share a common core of facts. Nonetheless, the

7

Court cannot say that the antitrust claim was "distinct in all respects" from the successful contract claim, *see Hensley*, 461 U.S. at 440, and therefore the Court will not exclude all expenses related to the antitrust claim (even if such segregation were possible).

The Court then considers whether plaintiffs' overall level of success justifies an award of all of the expenses incurred for both claims. Plaintiffs' counsel's attorney fee award reflects their overall success in the litigation by being tied directly (by percentage) to the damages they recovered on the successful contract claim; thus, the Court believes that any award of expenses should also reflect the overall level of success achieved in the litigation.

In this case, according to the pretrial order and plaintiffs' expert reports, the plaintiff class sought over $2.7 billion in damages on the antitrust claim (with $90 million of that amount attributable to damages suffered by the subclass). Meanwhile, the plaintiff subclass sought approximately $30 million in damages on the contract claim. In light of these stakes, it was not surprising at trial when the contract claim was treated almost as an afterthought. Thus, from the point of view of plaintiffs' counsel, given the defeat on the antitrust claim, the litigation can hardly be considered successful in any significant degree, even with the recovery of $16 million in damages on the contract claim. Even if the claims of the plaintiff subclass are considered separately, the subclass recovered less than one-eighth (excluding interest) of the amount of damages it sought. The relative lack of success in the litigation is further demonstrated by the fact that plaintiffs' counsel allegedly expended over $22 million in time in the litigation and incurred an additional $3 million in expenses, while recovering only $16 million for the subclass.

Because the overall level of success in the litigation for the subclass and for plaintiffs' counsel was low, and because only a small fraction of the expenses likely related to the contract claim, the Court in its discretion concludes that a substantial reduction to the expenses requested by plaintiffs' counsel is appropriate. The Court thus awards plaintiffs' counsel an amount representing 20 percent of the expenses requested, which amount the Court concludes is reasonable under all of the circumstances in this case.[4] Accordingly, the Court awards plaintiffs' counsel $612,814.88 from the judgment fund for expenses incurred in the litigation. Any objections to an award of expenses are otherwise overruled. Co-Lead Counsel for plaintiffs shall determine the uses and distribution of the award of expenses in their good faith best judgment.

IT IS THEREFORE ORDERED BY THE COURT THAT the motion by the plaintiff class representative for final approval of the proposed distribution plan (Doc. # 1126) is **granted** as modified as set forth herein.

IT IS FURTHER ORDERED BY THE COURT THAT class counsel's motion for attorney fees and expenses (Doc. # 1098) is **granted in part and denied in part** as more specifically set forth herein. Plaintiffs' counsel are awarded attorney fees from the judgment

---

[4]Plaintiffs' counsel used money received from a settlement with Sprint to cover over $2.7 million in expenses incurred to that point. Therefore, in actuality, plaintiffs' counsel have had a greater percentage of their total expenses incurred in this litigation reimbursed.

fund in the amount of $5,631,025.38 and expenses from the judgment fund in the amount of $612,814.88. Co-Lead Counsel for plaintiffs shall determine the uses and distribution of those awards in their good faith best judgment. The Court approves an incentive award in the amount of $10,000 for class representative Roger Gerdes.

IT IS SO ORDERED.

Dated this 12th day of May, 2011, in Kansas City, Kansas.

s/ John W. Lungstrum  
John W. Lungstrum  
United States District Judge